CITY OF OAK CLIFF ET AL. v. THE STATE EX REL. C. A. GILL.

No. 1296.   Decided March 7, 1904.

**1.—Cities—Adding Territory—Local Option Law.**

An act of the Legislature amending the charter of a city incorporated by special law by including in its charter limits a suburb before incorporated as a distinct city under the general law, was not rendered invalid by a provision that the local option law previously adopted in the justice precinct including such suburb should not be affected by such consolidation and the city government should have no power to permit liquor to be sold in such justice precinct; such provision was merely declaratory of existing law, useless and harmless. (Pp. 388, 389.)

**2.—City Charter—Amendment—Adding Territory—Constitution.**

An act amending section 2 of the special charter of a city, defining its boundaries, by adding thereto section 2a, describing the boundaries of a suburb added by such amendment to the limits of the city, was not unconstitutional under section 36 of article 3 of the Constitution, in failing to re-enact section 2 of the original special charter as amended. (Pp. 389-391.)

**3.—Same—Construction.**

The constitutional provision requiring an amended section of a law to be re-enacted and published at length, and not merely amended by reference to its title (Const., art. 3, sec. 36) is to be reasonably interpreted, and the action of the Legislature sustained unless clearly in violation of it; and it is not required that every act which amends an existing law should set out at length the entire law as amended. It was not intended to prohibit

the passage of a law which declared fully its provisions without reference to any other act, though its effect should be to enlarge or restrict the operation of some other statutes. (P. 389.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

The State, on the relation of Gill, sued the city of Oak Cliff and had judgment, from which defendant appealed, and upon affirmance obtained writ of error.

*R. M. Clark, Geo. A. Titterington, W. A. Bonner, Wm Charleton, M. L. Morris* and *Etheridge & Baker,* for plaintiffs in error.—The special act of the Legislature made the basis of this proceeding expressly purports to amend section 2a of the charter of the city of Dallas, relative to the boundary lines of said city, and adding thereto section 2a, changing said boundary lines and limits of the said city of Dallas, and the amended section, as is manifest, was not re-enacted and published at length, and the boundaries of the city of Dallas, as defendant in error claims the same now exist, can be ascertained only by reading the purported amended section and the original section purporting to be amended together, and the act is therefore void as being repugnant to the requirements of section 36, article 3, of the Constitution of the State of Texas, and the said Court of Civil Appeals erred in not so holding. Haring v. State, 17 Atl. Rep., 1079; State v. Trenton, 22 Atl. Rep., 731; Martinsville v. Frieze, 33 Ind., 507; Womack v. Garner, 10 Texas Civ. App., 371; Miller v. State, 69 S. W. Rep., 522; Coxe v. State, 39 N. E. Rep., 400; In re Buelow, 98 Fed. Rep., 86; Trumble v. Trumble, 55 N. W. Rep., 869; 23 Am. and Eng. Enc. of Law, 278-281, and cases cited; Suth. Stat. and Const. Law, 131, 132; Booneville v. Trigg, 46 Mo., 288; Copland v. Pirie, 67 Pac. Rep., 227.

The special act of the Legislature made the basis of this proceeding is void, in that it affirmatively appears therefrom that annexation was to be effected upon certain vital conditions thereinafter set forth, and from an inspection thereof it is manifest that one of such vital conditons was that local option should prevail in the territory of Oak Cliff; and it is further manifest that the provisions of said act with reference to local option are void, because not expressed in the title, and because same are repugnant to section 20 of article 16 of the Constitution of the State of Texas, and the necessary elimination of the provision of the act relating to local option in the territory of Oak Cliff operates to render the entire act void, and the said Court of Civil Appeals erred in not so holding.

*Walter S. Lemmon,* County Attorney; *W. M. Alexander, Wm. P. Ellison, R. C. Porter, Jas. J. Collins, W. T. Henry, C. F. Cohron, N. L. Lindsley, T. B. McCormick, E. G. Senter, D. E. Greer,* and *Geo. F. Hudson,* for defendant in error.—A statute, if complete and original within

itself, may stand as an independent enactment, although it purports to be an amendatory act, and is insufficient as such, and the court will look to the body of the law to determine whether or not the act is supplemental or in addition to another statute, and may disregard so much of same as purports to be amendatory, as surplusage, if in fact the act within itself is complete, supplemental or in addition to an existing statute. If the law is in itself complete and intelligible and original in form, it does not fall within the meaning and spirit of the Constitution. Womack v. Garner, 31 S. W. Rep., 358; Gandy v. State, 86 Ala., 20, 5 So. Rep., 420; Bradley & Currier Co. v. Loring, 23 Atl. Rep., 685; Sheridan v. Salem, 12 Pac. Rep., 925; Edwards v. Denver & R. G. Ry. Co., 21 Pac. Rep., 1011; State v. Hancock, 24 Atl. Rep., 726; In re Borrowdale, 39 Fed. Rep., 376; In re White, 61 N. W. Rep., 287; Judson v. City of Bessemer, 4 Law. Rep. Ann., 742; Suth. on Stat. Const., sec. 131; 23 Enc. of Law, 1 ed., 277; State v. Bennett (Mo.), 11 S. W. Rep., 264; Stein v. Leeper, 78 Ala., 517.

The evil aimed at by the framers of the Constitution in providing in section 36, article 3, "No law shall be revived or amended by reference to its title; but in such case, the act revived, or the section or sections amended, shall be re-enacted and published at length," was to prohibit the amendment of a law by the insertion of words therein, and thus changing it. It was not intended to apply when the sections added were entire and complete within themselves. The requirement does not apply to supplemental acts not in any way altering or modifying the original act; to those merely adding new sections to the existing statutes without modifying the same; nor to acts perfect and complete within themselves, which by implication or which in effect amend other legislation on the same subject. City of Oak Cliff v. State of Texas, 8 Texas Ct. Rep., 589; Womack v. Garner, 10 Texas Civ. App., 371; Womack v. Garner, 31 S. W. Rep., 358; Quinlan v. Railway Co., 89 Texas, 376; Clark v. Finley, 93 Texas, 180, 54 S. W. Rep., 343; Weekes v. City of Galveston, 21 Texas Civ. App., 106; Snyder v. Compton, 87 Texas, 379; Johnson v. Martin, 75 Texas, 38; Nobles v. State, 42 S. W. Rep., 978, 38 Texas Crim. Rep., 332; Cooley's Const. Lim., 151.

BROWN, Associate Justice.—From the opinion of the honorable Court of Civil Appeals we extract the following pleadings in this case:

"On July 1, 1903, appellee filed in the District Court of the Forty-fourth Judicial District of the State of Texas, its information in the nature of a quo warranto on the relation of C. A. Gill individually, and as acting mayor of the city of Dallas, against the city of Oak Cliff and the various officers thereof, and against the trustees of the independent school district of Oak Cliff, seeking a judicial determination to the effect that the said city of Oak Cliff became disincorporated on July 1, 1903, and that its territory became annexed to the city of Dallas, and that the officials of Oak Cliff and the trustees of the

said independent school district, in continuing thereafter to perform their respective official duties, became usurpers, and praying judgment of ouster. The petition recites that the city of Dallas was and is a municipal corporation of more than ten thousand inhabitants, duly incorporated as such by a special act of the Legislature of Texas; that by amendment to the charter of the city of Dallas as then existing the corporation of the former city of Oak Cliff was abolished and the corporate limits of the city of Dallas extended by the terms of the said act of the Legislature to include the territory comprised within the limits of the former city of Oak Cliff and some intervening territory; that by virtue of the provision of the said act of the Legislature the public affairs of the city of Oak Cliff under the new arrangement were adjusted and its corporate property, including the property of the public schools situated in the city of Oak Cliff, disposed of, and the future rights and relations of the two towns after the consolidation determined as explicitly shown by the allegations of the petition. That the act was duly passed by the Legislature of the State of Texas and approved by the Governor of Texas and became effective on the 1st day of July, 1903. That all of the officers of Oak Cliff and the trustees in charge of the public schools refused to recognize the validity of the said act or in any respect to yield obedience to the same, but continued to exercise their former prerogatives and authority without regard to the said law.

"The defendants interposed general and special exceptions, challenging the validity of the act amending the charter of Dallas so as to include Oak Cliff. The exceptions were overruled and exception taken. The cause was submitted to the court on an agreed statement of facts and from a judgment in favor of the plaintiff the defendants appealed."

The case was tried before the district judge upon an agreed statement of facts from which we make the following condensed statement sufficient for the purposes of this opinion:

Prior to April 3, 1903, the city of Dallas was a municipal corporation, containing more than ten thousand population, organized under a special act of the Legislature of the State of Texas, and Oak Cliff was a municipal corporation, containing less than ten thousand population, organized under the general laws of the State. The persons named as defendants were the officers of Oak Cliff, except that William Charlton, R. N. Clark, S. H. Chiles, John M. George, E. F. Allen, R. L. Erwin and John N. Wharton were trustees of the independent school district of Oak Cliff, which school district was duly organized under the general laws of the State and embraced only the city of Oak Cliff. All of the property that belonged to the free schools of that district was located within the limits of the city of Oak Cliff. Between the city of Dallas and the city of Oak Cliff there was an intervening territory not incorporated and which was by the act in question included within the territory added to Dallas. A majority of the citizens of Oak Cliff had their offices and places of business in the city of Dallas and transacted their

business there. The greater part of the shopping was done by the people of Oak Cliff in the city of Dallas, except in the purchase of groceries, which were supplied by local grocers. There was an electric street car line running between the two cities which carried passengers, making the trip every fifteen minutes; between the two cities there were two macadamized public highways.

The defendants refused to obey the special law of the Legislature, which added this territory to the city of Dallas, whereupon this suit was instituted for the purpose of ousting the said corporation and its officers from the exercise of corporate authority within that territory.

The following agreement is embraced in the statement of facts: "It is agreed that if said act, marked exhibit A and made a part of the information, is a valid law, judgment shall go for the plaintiffs; and if the same shall not be considered a valid law, then judgment shall go for the defendants."

The district judge overruled the general and special exceptions filed by the defendants, and, upon consideration of the facts, entered judgment in favor of the State of Texas, which judgment was affirmed by the Court of Civil Appeals.

On May 9, 1899, the Legislature of the State of Texas passed a special law by which a new charter was granted to the city of Dallas, the second section of which gave the boundaries of said city, from which we quote in part as follows: "Beginning on the east bank of the Trinity River at low water mark midway between Commerce Street and Main Street; thence southerly with the meanders of the river to the southeast boundary line of the A. C. McDaniels survey; thence in a course about forty-five degrees east with said southeast boundary line to the A. C. McDaniels survey," etc., continuing with the various calls until it reaches the river. This call closes the survey: "thence southerly with the meanders of said river to the place of beginning." The charter was amended by the Twenty-sixth Legislature, in matters having no connection with this litigation. The Twenty-seventh Legislature, at its regular session, passed a special law amending the charter by adding thereto thirty sections numbered from 1a to 30a inclusive, but none of them embrace any of the matters which are involved in this controversy. The regular session of the Twenty-eighth Legislature enacted a special law, the caption of which is as follows: "An Act to amend section two (2) of the charter of the city of Dallas, relating to the boundary lines of said city, and adding thereto section 2a, changing said boundary and limits of the said city of Dallas and thereby including within and attaching to said city of Dallas the corporation and city of Oak Cliff, and certain other adjacent territory, and abolishing the corporation of the city of Oak Cliff, and declaring an emergency." The section of the act reads thus: "Section 1. Be it enacted by the Legislature of the State of Texas: That section 2 of the charter of the city of Dallas be amended by adding section 2a." From sections 2a and 2a1, we copy: "That the bounds and

limits of the said city of Dallas are hereby extended so as to include the territory described as follows: Beginning at low water mark on the east bank of the Trinity River where the south line of Commerce Street intersects the west boundary line of the city of Dallas;" then follows a description of the territory which includes the city of Oak Cliff, and we quote the last call, which is: "Thence north with the west line of the S. Beaty survey across Trinity River to the corporate line of the city of Dallas." Section 2a1: "That all of the territory embraced within the above limits and boundaries be, and the same is, hereby attached to and made a part of the city of Dallas, in Dallas County, from and after the time that this act shall take effect."

We find it unnecessary to discuss the many questions which have been ably presented by counsel and will confine this opinion to two of the propositions relied upon for a reversal of the judgment: First, that the provision of the act in question with regard to local option is void and therefore the entire act must fall. Second, that the act is an amendment of section 2 of the charter of the city of Dallas, does not re-enact the section as amended, and is in conflict with article 3, section 36, of the Constitution of the State.

Section 10 of the last named act is in these words: "The said territory of Oak Cliff hereby added to the city of Dallas, is hereby declared to be a residence district, and the city council of Dallas shall never have authority to permit any intoxicating liquors to be sold, bartered or exchanged within said limits. That the present statute of local option, as it now exists in said territory of Oak Cliff, shall not be repealed or changed by any act of the city council of Dallas, and should any election be held on said question, it shall be held solely in the entire justice precinct in which the city of Oak Cliff was, and is, situated prior to the adoption of this act, to wit: Precinct No. 7, Dallas County, Texas, as it is now constituted." If that section had been omitted from the charter the city council of Dallas could not "permit any intoxicating liquors to be sold, bartered or exchanged within the limits of precinct No. 7 in Dallas County," because the local option law, being lawfully in force in that precinct at the time the territory was attached to the city of Dallas, would continue in force until repealed according to law, and the city council would have no authority over the subject within the territory embraced in the local option district, because the State of Texas could not grant license to any person to sell intoxicating liquors within the limits of precinct No. 7, and the city has no authority to grant license except to persons to whom the State has granted license. If section 10 were eliminated, the city council of Dallas would have no authority to repeal or otherwise set aside the local option law. The language, "and should any election be held on said question, it shall be held solely in the entire justice precinct in which the city of Oak Cliff was, and is, situated prior to the adoption of this act, to wit, precinct No. 7, Dallas County, Texas, as it is now constituted," refers to the elections author-

ized by the local option law to be held in the same territory for the purpose of determining whether local option shall be continued in that precinct, and could not be held except under the law of the State over which the city could have no control. Art. 3393, Rev. Stats. The effect of section 10 is to declare the law as it was at the time the charter was amended, and in no manner affects the rights of the citizens of Oak Cliff on that question as they existed prior to the adding of that territory to the city of Dallas. It was useless and is harmless.

Section 36 of article 3 is in the following language: "No law shall be revived or amended by reference to its title; but in such case the act revived or the section or sections amended shall be re-enacted and published at length." In determining whether the law under investigation is violative of the foregoing section of the Constitution it is the duty of the court to give such construction to the language of the act as will make it valid and sustain the law if it is fairly susceptible of that construction. Barker v. Torrey, 69 Texas, 12. In that case the court said: "The rule is that a law will not be declared unconstitutional unless it is clearly so, and in cases of doubt it will be held valid. The opinion of the Legislature of its constitutional power is entitled to great weight; and, if it had not clearly the power to suspend for a time the right of the State to forfeit the right of purchasers of school lands, the question is, to say the least, a matter of such doubt as to render it improper for this court to declare its act unconstitutional."

In construing the statute a reasonable interpretation of the Constitution will be indulged in order to give effect to the purposes and intent of its framers. People v. Wright, 70 Ill., 397. We can not better express the purposes for which the constitutional provision was adopted than by quoting from the opinion of Chief Justice Gaines in the case of Snyder v. Compton, 87 Texas, 378, as follows. After quoting section 36, article 3, of the Constitution, the Chief Justice said: "It is not meant by this provision that every act which amends the statutory law shall set out at length the entire law as amended. Under such a rule legislation would in many instances be impracticable. This is especially the case in this State, where the existence of the common law is due to statutory enactment. The practice which it was the purpose of the provision in question to prohibit was that of amending a statute by referring to its title, and by providing that it should be amended by adding to or striking out certain words, or by omitting certain language and insert-ing in lieu thereof certain other words. It was not intended to prohibit the passage of a law which declared fully its provisions without direct reference to any other act, although its effect should be to enlarge or restrict the operation of some other statutes. Similar provisions in other Constitutions have been construed not to apply to implied amendments. People v. Mahaney, 13 Mich., 481; Swartwout v. Railway, 24 Mich., 389; Lehman v. McBride, 15 Ohio St., 573; Preston v.

Bennett, 8 W. Va., 74; Insurance Co. v. Taxing District, 8 Lea, 644; Baum v. Raphael, 57 Cal., 361. The statute in question restricts the operation of the former statutes upon the same subject, but we think can not be deemed as an amendment of such acts within the meaning of the section quoted." The rule stated by Chief Justice Gaines is well supported by authorities, of which we cite: Gandy v. State, 86 Ala., 20; Quinlan v. Houston & T. C. Ry. Co., 89 Texas, 356; Edwards v. Denver & R. G. Ry. Co., 21 Pac. Rep., 1011; Evernham v. Hulit, 45 N. J. Law, 58; Bradley & C. Co., Ltd., v. Loring, 23 Atl. Rep., 685; Sheridan v. City of Salem, 12 Pac. Rep., 925.

The Act of April 3, 1903, amending the charter of the city of Dallas, does not change a word nor a sentence in original section 2, nor does it in any manner alter the effect of that section; nothing is added to it and nothing is subtracted from it. It is not necessary to resort to section 2 in order to understand the new act. Any legislator looking at the amendment standing alone would understand as well what territory was being added to the city of Dallas as if the whole section 2 had been re-enacted. The boundary begins and ends on a line of the city of Dallas, which completes the description of the territory added. It is manifest that none of the evils were imminent in the enactment of this law which was contemplated or intended to be prevented by the adoption of section 36, article 3, of the Constitution, and the act before us is not condemned by the spirit of the Constitution.

The law which purported to amend section 2 has all the elements of an independent supplemental act or an amendment to the city charter. It fully and completely describes the territory which is to be added to the city of Dallas so that independently of the existing charter that territory could be ascertained, and in any proceeding involving the issue, it could be determined whether the city of Dallas has jurisdiction over any given place within the limits of the city of Oak Cliff without resorting to the field notes in section 2 of the charter, and every subject in its caption is disposed of and provided for. Taking the whole of the act together, it is plain that it is not such amendment to section 2 of the original charter as is forbidden by the Constitution, and we think that a reasonable construction requires us to disregard the language which would make it an amendment to section 2 and void, and to apply the broader rule of construction whereby the intention of the Legislature will be declared and the law sustained.

In the case of Gandy v. State, 86 Ala., 23, that court had under examination an act which in terms declared it to be an amendment to an existing law and the same objection was urged as in this case, but that court said: "The act under consideration being original in form, and complete and independent in itself, is not, therefore, repugnant to the section of the Constitution above quoted, provided there be unity in the subject of the law, and that subject is 'clearly expressed in its title.'

If the law were entitled an act to authorize the probate court of Butler County, Alabama, to order an election to determine whether spirituous and other named liquors shall be sold, or otherwise disposed of, in precinct 12 of said county—as the latter part of the title purports to do—it would be unobjectionable on any constitutional ground. This title would express the true purpose and object of the law in language free from all ambiguity. Ballentine v. Wickersham, 75 Ala., 533. Is it vitiated by the fact that the title purports to amend the general law precisely to this extent? A casual inspection of the whole law, title and act together, shows plainly that the only amendment intended is one by implication, effected by an original law, complete in form and substance—such as we have shown is not prohibited by any clause of the Constitution. The title of the act, taken alone, also shows this intent clearly. The old law is to be amended, not strictly or technically, but by implication merely, so as to authorize a specific purpose to be accomplished through the medium of new legislation. The first part of the title, therefore, is surplusage, and may be rejected as such. It does not change the purpose of the law, nor destroy the unity of the subject. Stein v. Leeper, 78 Ala., 517. The law, as it was before the new act, would have been incidentally amended, whether the title had so proclaimed it or not."

The reasoning in the above extract is forceful and directly applicable to the facts of this case. The Act of April 3, 1903, adding new territory, including Oak Cliff, to the city of Dallas, is not in conflict with any provision of the Constitution of this State.

In preparing the application for writ of error, counsel by mistake used this language: "Purports to amend section 2a of the charter," etc., whereas it should have been "section 2." After the application was filed the letter "a" was erased. If the correction had not been made the assignment would have raised the same issue, because the mistake was patent. There was no impropriety in making the correction.

Finding no error in the judgments of the District Court and the Court of Civil Appeals, both judgments are affirmed.

*Affirmed.*

Justice Williams dissents.