## Henderson Traction Company v. City of Henderson.

### (Decided November 30, 1917.)

### Appeal from Henderson Circuit Court.

1. Statutes—Amendment—Setting Forth—Amended Act.—Acts 1914, c, 53, entitled "An act to amend section 3290 in subdivision 2 of article 4, chapter 89, Kentucky Statutes, and providing for the oiling of streets in the cities of the third class," which states that it amends said section by adding thereto subsection 42, which does not in fact change, revise, extend, or in anywise affect any of the provisions of the section purporting to be amended or any other section of the statutes, but is complete in itself and does not require a reference to the amended section or to any other law to discover its scope or meaning is not invalid under constitution, section 51, providing that no law shall be amended by reference to its title only, but so much thereof as is amended, revised, or extended shall be re-enacted and published at length, because the section purporting to be amended and its numerous subsections were not re-enacted and published at length.

2. Municipal Corporations—Special Taxes for Local Improvements—Oiling the Streets—Statutes—Construction.—Where no such method of assessment is adopted and where the statute is not susceptible of such a construction, a street railway company can not complain that its property is taken without due process of law, or that it is denied the equal protection of the laws, on the ground that the statute authorizing an assessment for oiling the streets against a street railway company, permits such assessments on streets not covered by its tracks.

3. Municipal Corporations—Special Tax for Local Improvements—Oiling the Streets—Constitutional Law—Due Process of Law—Equal Protection of Laws—Statutes—Validity.—In the absence of pleading and proof on the subject, a statute authorizing an assessment against a street railway company of one-sixth of the

cost of oiling streets along which its line of railway runs, will
not be held invalid on the ground that the authorized assessment.
so far exceeds the company's reasonable proportion of the cost,
as to amount either to a taking of property without just compensa-.
tion or to a denial of the equal protection of the laws.

4.    Municipal Corporations—Special Tax for Local Improvements—
      Validity.—Where in an action against a street railway company to
      recover a special assessment for oiling the streets, it is admitted
      by the demurrer that such oiling has the effect of permanently im-
      proving the street, the assessment will not be held invalid on the
      ground that the street railway company received no substantial
      benefit in return for the assessment.

JOHN C. WORSHAM, ALBERT W., ARTHUR F. and ALBERT C.
FUNKHOUSER and ROBERT D. MARKEL for appellant.

B. S. MORRIS and VANCE & HEILBRONNER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

These two appeals involve the constitutionality of
subsection 42, section 3290, Kentucky Statutes. The sub-
section in question is chapter 53, Acts 1914, and is as
follows:

"An act to amend section 3290 in subdivision 2 of
Article 4, Chapter 89, Kentucky Statutes, and providing
for the oiling of streets in cities of the third class.

"Be it enacted by the General Assembly of the Com-
monwealth of Kentucky:

"That section 3290, in subdivision 2, of Article 4,
Chapter 89, Kentucky Statutes, be amended by adding
to said section subsection 42, as follows:

"42.    That said cities of the third class are hereby
empowered to further improve their streets by oiling the
same. The several councils of said cities are hereby
authorized and empowered to have such streets as they
may deem necessary oiled, such streets to be designated
by resolution of the common council; the city to provide
the oil and have it put on the streets under the super-
vision of the city engineer or street inspector; and the
cost thereof to be borne, one-third by the abutting prop-
erty owners on one side of the street; one-third by the
abutting property owners on the other side of the street,
and the other third, together with the street intersec-
tions, to be paid by the city out of the street fund; pro-
vided, however, that on streets where there is a car line,
the city's part of the expense may be equally divided
between the city and the railway company.

"When said work is done the city engineer shall ascertain and apportion the cost as herein indicated and certify the same, with the names of the parties (owing) owning it, to the common council, and when the said report is approved by the council said costs shall become due and payable to said city, and if not paid within thirty days, said costs shall become a lien upon said property and may be collected by a petition in equity filed in the circuit court of the county, and said court of equity is hereby empowered to enforce said lien and sell said property to satisfy said claim or claims.

"Because of the intolerable dust and the impracticability of keeping it down with water, and the injurious, effects of the water on the streets, an emergency is declared to exist and this act shall take effect and be in force from and after its final passage."

The question arises in the following way: The city of Henderson brought separate suits against the Henderson Traction Company to recover assessments for oiling the streets for the years 1914 and 1915. The petition as amended in each case sets out the passage of the aforesaid act, the adoption by the council of a resolution providing for the oiling of certain streets, the levy of the assessments by the city against the abutting property owners and the Henderson Traction Company, and the refusal of the traction company to pay the assessment. It was further alleged that the improvement consisted of spreading heated asphaltoline oil over and upon the surface of the streets and covering same with a coating of fine sand after the streets had been prepared by cleaning the dirt off the metal; that the oil had the effect of forming a coating over the street's surface, thereby making the same impervious to water and preserving the material of which the streets were constructed, thus affording a better roadway and giving greater life and permanency to the material of which the streets were constructed. The demurrers to the petitions as amended were overruled and the traction company having declined to plead further, judgments were rendered in favor of the city for the sums sued for. The traction company appeals.

1. Section 51 of the constitution provides:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by refer-

ence to its title only, but so much thereof as is revised, amended, extended or conferred shall be re-enacted and published at length.''

It is insisted that the act does not meet the requirements of the above section of the constitution, because it is either an amendment, a revision, or an extension of section 3290, Kentucky Statutes, and does not re-enact or publish that section at length. Section 3290, Kentucky Statutes, provides:

''The common council of each of said cities shall, within the limitations of the constitution of the state and this act, have power by ordinance.'' At the time of the adoption of the act in question, the above section was followed by forty-one subsections, specifying the powers conferred and covering about five pages of the Kentucky Statutes. These subsections relate to taxation, appropriation of money, contagious diseases, hospitals, water, light, the fire department, and numerous other subjects. Subsection 42, added by the act in question, does not change, revise, or extend or in anywise affect any of the powers conferred by the forty-one subsections, or any other section or subsection of the statutes. It simply conferred a power not theretofore conferred or possessed by councils of the cities of the third class. Not only so, but we do not have to look to section 3290 for the purpose of incorporating in the act in question the words of that section, ''shall have power by ordinance.'' On the contrary, the body of the act in question specifically provides ''that said cities of the third class are hereby empowered to further improve their streets by oiling same,'' and ''the several councils of said cities are hereby authorized and empowered, etc.'' Not only so, but the title of the act clearly sets forth the purpose of the act. In other words, the added section is a supplemental act, complete in itself, and does not require a reference to any other law to discover its scope or meaning. Therefore, the re-enactment and publication of section 3290, and its numerous subsections which were not altered, changed or in anywise affected by the added section, and which were not necessary to be before the legislature in order for that body to understand and appreciate the legal effect of the added section, would have been a vain and useless thing. We, therefore, conclude that the act, though purporting to be an amendment of section 3290, was not such an amendment, revision or extension of that section as required that section and its numerous subsections to be re-enacted and

published at length together with the added section, in order to give validity to the latter. City of Oakcliff v. State, 97 Tex. 383, 79 S. W. 1; Swartwout v. Michigan Air Line R. R. Co., 24 Mich. 389; Sou. Pacific Company v. Bartine, 170 Fed. 725; McCleary v. Babcock, 169 Ind. 228, 82 N. E. 453. The cases of Board of Prison Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017, and Hickman, Mayor, et al. v. Kimbley, 161 Ky. 652, 171 S. W. 176, do not announce a contrary doctrine. In the first mentioned case, the act purported to amend an existing act by reference to its title only, and was therefore held unconstitutional. In the second mentioned case, the act was in effect an amendment of an existing section of the statutes, and the amendatory act did not set forth the section as it should read when amended.

2. It is also argued that the act is unconstitutional because it violates section 13 of our constitution, and the Fourteenth Amendment to the Federal Constitution, in that it authorizes the taking of private property without just compensation, deprives a street railway company of its property without due process of law, and denies to such a company the equal protection of the laws. In support of this position it is contended that while the assessment against the property owners is limited to the abutting property, the statute is so framed that an assessment might be levied against a street railway company for oiling the streets for ten squares, even though the company's line was limited to one square. In reply to this contention, it is sufficient to say that no such method of assessment was adopted in this case, nor is the statute susceptible of such a construction. Fairly construed it merely authorizes the levy of an assessment for oiling those streets on which the street railway company's tracks are laid. Nor can we say in the absence of pleading and proof on the subject, that the authorized assessment so far exceeds the company's reasonable proportion of the cost as to amount either to a taking of property without just compensation or to a denial of the equal protection of the laws.

In this connection it is also insisted that the case falls within the rule announced in City of Owensboro v. Sweeney, 129 Ky. 607, 111 S. W. 364, where this court held that an act authorizing the assessment of the cost of street sprinkling against the abutting property was invalid on the ground that such property derived no special and distinct benefit therefrom. An examination of this case will show that the court based its opinion

entirely on the fact that the sprinkling of streets was for the mere convenience, or pleasure, or comfort of the persons using the streets and did not materially benefit the abutting property by making the streets more durable. In these cases, however, it is admitted by the demurrers that the spreading of the oil has the effect of not only improving the streets for purpose of travel, but of preserving and making them more lasting. Under these circumstances we cannot say that the street railway company received no substantial benefit in return for the assessment. Indeed, we have heretofore held that part of the cost of improving a street might be assessed against a street railway company whose tracks ran over such streets. City of Newport v. Silver, 143 Ky. 704, 137 S. W. 546. And as it is admitted that the oiling of streets is a permanent improvement, we see no reason why a reasonable part of the cost thereof may not be assessed against a street railway company which enjoys the use of such streets.

Judgment affirmed.